UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant TikTok, Inc.'s Motion to Compel Arbitration and Stay Litigation [24]

## I.  INTRODUCTION

On August 13, 2025, Emory Andrew Tate, III ("Andrew Tate") and Tristan Tate (collectively, "Plaintiffs") filed a Complaint against TikTok, Inc. ("Defendant") in California state court, asserting federal and state law claims. (ECF No. 1-2.) On August 20, 2025, Defendant removed this action to this Court. (ECF No. 1.)

Presently before the Court is Defendant's Motion to Compel Arbitration, requesting the Court compel arbitration in Singapore or, alternatively, before the American Arbitration Associate ("AAA"). (ECF No. 24.) For the following reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration in Singapore.

## II.  FACTUAL BACKGROUND

The following allegations are asserted in the parties' Motion to Compel briefing, unless otherwise stated:

This action arises from Defendant allegedly removing Plaintiffs' personal accounts from its online social media platform. Plaintiffs are "internationally recognized as entrepreneurs, media figures, and influencers," owning various ventures including "educational platforms, subscription-based content services, and real estate investments." (Compl. ¶¶ 16, 20.) Defendant's social media platform allows users to connect and communicate with one another globally. Plaintiffs' online content disseminated on several social media platforms, including Defendant's, has reached millions of followers and "generated substantial income to Plaintiffs through endorsements, affiliate partnerships, and direct monetization." (*Id.* ¶ 21.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

Users cannot access Defendant's platform and create a profile without accepting Defendant's governing Terms of Service ("TOS"). Thus, users are presented with Defendant's TOS at three different junctures. First, after downloading the app, users are presented with a screen that says, "By tapping 'Agree and continue', you agree to our **Terms of Service** . . ." right above an "Agree and continue" action button. (N. Yeh Decl. ¶ 9, ECF No. 24-1) (emphasis in original.)



(*Id.*) In this pop-up banner, "Terms of Service" is hyperlinked to the most recent version of the governing TOS, the version of which is based on the user's location. A user cannot continue to access or otherwise use the platform unless they click the "Agree and continue" button.

Second, once a user has access to the social media platform, they may create a personal account. The platform will prompt the user to log in, if they have a preexisting account, or click the "Sign up" button that appears at the bottom of the screen. Above the "Sign up" button, Defendant provides a similar statement as the user is first shown when downloading the app.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |



(*Id.* ¶ 13.) The bolded "Terms of Service" language is again hyperlinked to the governing TOS.

Third, Defendant periodically updates its TOS. "When it makes a material update, users are informed of the updated TOS and required to agree to the updated TOS in order to continue using the platform." (*Id.* ¶ 15.)

Defendant has three versions of its TOS based on user location: (1) the United States TOS ("US TOS"); (2) the European Economic Area and United Kingdom TOS ("EEA/UK TOS"); and (3) the Rest of the World TOS ("ROW TOS"), which includes all countries outside the United States, the European Economic Area, the United Kingdom, Switzerland, and India. (*See* ROW TOS, Ex. 1, ECF No. 24-2; US TOS, Ex. 2, ECF No. 24-3; EEA/UK TOS, Ex. 3, ECF No. 24-4.) United States users are presented with and governed by the US TOS when accessing the social media platform. Similarly, United Kingdom, Switzerland, and European Economic Area users are presented with and their platform access is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

governed by the EEA/UK TOS. Likewise, users in countries outside those countries are presented with and their platform access is governed by the ROW TOS.

As is relevant for this Motion, the current ROW TOS went into effect in February 2021 ("February 2021 ROW TOS"). (*See* ROW TOS, Ex. 1.) The February 2021 ROW TOS provides that its terms "form a legally binding agreement between you and us," with "us" defined as "TikTok Pte. Ltd. or one of its affiliates." (*Id.* at 1.)[1] The February 2021 ROW TOS states that it is "governed by the laws of Singapore" and includes the following arbitration clause:

> "Any dispute arising out of or in connection with these Terms, including any question regarding existence, validity or termination of these Terms, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre ('SIAC') in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ('SIAC Rules') for the time being in force, which rules are deemed to be incorporated by reference in this clause. The Seat of the arbitration shall be Singapore."

(*Id.* at 15.)

Additionally, the US TOS Plaintiffs attached to their Complaint went into effect in February 2019 ("February 2019 US TOS"). (*See* Compl., Ex. A, ECF No. 1-2.) In their Complaint, Plaintiffs allege their relationship with Defendant was governed by the February 2019 US TOS. (Compl. ¶ 39.) The February 2019 US TOS provided that it was a "legally binding agreement between" the user and "TikTok Inc." (*Id.* at 24.) The February 2019 US TOS also includes an arbitration clause, requiring users to first engage in an "informal dispute resolution process" for disputes, and "any remaining dispute, controversy, or claim" relating to use of Defendant's services "will be finally resolved by binding arbitration." (*Id.* at 37.)

In its Motion, Defendant identified several accounts on its platform as belonging to Plaintiffs. On April 13, 2020, Andrew Tate registered his "@cobra_tate" account with a Ukraine country code. On October 15, 2021, Andrew Tate registered his "@CobraTate_Official" account with a Czechia country code. On May 1, 2020 and June 26, 2021, Tristan Tate respectively registered his "@talismantate" and "@tatethetalisma" accounts with a Nigerian IP address. Since these countries fall within the geographic scope of the ROW TOS, Plaintiffs were each presented with the ROW TOS when accessing the platform and registering their accounts.[2]

---

[1] Defendant contends it is an affiliate of TikTok Pte. Ltd., which Plaintiffs do not dispute.
[2] Plaintiffs have not disputed these facts nor the relevance of them for the purposes of this Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

### III.   JUDICIAL STANDARD

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. International commercial arbitration agreements involving a United States corporation are governed by Chapter 2 of the FAA, which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1152–53 (9th Cir. 2008); 9 U.S.C. §§ 201–208.

Under Chapter 2 of the FAA, courts apply a two-step analysis when a party subject to the Convention moves to compel arbitration. *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000); 9 U.S.C. § 206. First, the reviewing court makes a "limited inquiry" based on four preliminary questions to determine whether there exists an arbitration agreement that falls under the Convention. *Id.* (citing *Sedco Inc. v. Petroleos Mexicanos Mex. Nat'l Oil Co.*, 767 F.2d 1140, 1144–45 (5th Cir. 1985)). Second, if there is such an arbitration agreement, the district court must order arbitration unless the agreement is null and void or otherwise incapable of being performed. *Chloe Z Fishing Co.*, 109 F. Supp. 2d. at 1241 (citing *Ministry of Def. of Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992)).

On a Motion to Compel Arbitration, the Court should consider the strong federal policy favoring arbitration and the underlying goals of the Convention to encourage the "recognition and enforcement of commercial arbitration agreements." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (explaining that the strong policy in favor of arbitration applies with special force in the field of international commerce).

### IV.   DISCUSSION

Defendant moves to compel arbitration in Singapore, arguing that Plaintiffs agreed to Defendant's February 2021 ROW TOS, which requires users to arbitrate their disputes arising from the TOS, including use and access to Defendant's platform, with Defendant before the SIAC. Defendant contends that the February 2021 ROW TOS is an enforceable agreement governed by the Convention and no exception applies. Alternatively, Defendant moves to compel arbitration before the AAA under the February 2019 US TOS, which Defendant contends Plaintiffs already stated they were bound by in their Complaint.

The Court first addresses whether the February 2021 ROW TOS is governed by the Convention and enforceable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

**A.    Applicability of the Convention**

An arbitration agreement falls within the Convention when "1) there is an agreement in writing within the meaning of the Convention; 2) the agreement provides for arbitration in the territory of a signatory of the Convention; 3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and 4) a party to the agreement is not an American citizen, or . . . the commercial relationship has some reasonable relation with one or more foreign states" (hereinafter, the "*Balen* factors"). *Balen v. Holland Am. Line Inc.*, 583 F.3d 547, 654–55 (9th Cir. 2009).

Plaintiffs appear to only contest the first factor, arguing that there is no enforceable valid agreement between the parties to arbitrate this dispute. The Court addresses this factor before moving on to the rest of the *Balen* factors.

   1.    *The First Factor: Valid, Written Agreement*

As to the first factor, neither parties dispute that the February 2021 ROW TOS is a written agreement containing an arbitration provision. However, Plaintiffs contest that it is valid and enforceable in this action, arguing that (1) Defendant is not a party to the agreement and thus cannot enforce its provisions; and (2) Plaintiffs did not receive proper notice of or manifest assent to the February 2021 ROW TOS. Defendant disagrees, arguing that (1) it is incorporated as a party to the agreement as an affiliate of TikTok Pte. Ltd.; and (2) Plaintiffs received conspicuous notice of the February 2021 ROW TOS, and they took some action that manifested their assent to the terms.

As a preliminary matter, the Court must first consider what jurisdiction's substantive laws apply to determine whether there is a valid arbitration agreement. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that federal courts determine the existence of a valid arbitration agreement by apply "ordinary state-law principles that govern the formation of contracts"); *see also Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011) (holding that absent "clear and unmistakable evidence" that parties agreed to apply non-federal arbitrability law, courts should apply federal arbitrability law). As outlined above, the February 2021 ROW TOS provides that it is governed by Singapore law. As Defendant pointed out in its Motion, Singapore contract law is similar to California law. *See Translarity, Inc. v. Grand Junction Semiconductor Pte.*, 2024 WL 4634059, at *6 (N.D. Cal. Oct. 29, 2024); *Saw v. Avago Techs. Ltd.*, 51 Cal. App. 5th 1102, 1109 (2020) ("Many principles of contract interpretation under Singapore law will be familiar to legal practitioners in California.").

Accordingly, since Plaintiffs do not contest Singapore contract law applies and both parties utilize California law for analyzing the validity of the February 2021 ROW TOS, the Court finds it unnecessary to resolve the question of whether Singapore or California law applies because under either law the result is the same. *See Translarity, Inc.*, 2024 WL 4634059 at *6 (holding the same). The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

moves on to consider whether (1) Defendant can enforce the agreement; and (2) Plaintiffs received notice of and manifested assent to the February 2021 ROW TOS.

   a.  *Defendant Enforcing the February 2021 ROW TOS*

  As outlined above, the February 2021 ROW TOS provides that its terms "form a legally binding agreement between you and us," with "us" defined as "TikTok Pte. Ltd. or one of its affiliates." (ROW TOS at 1.) TikTok Pte. Ltd. and Defendant are commonly owned. (N. Yeh Decl. ¶ 21.) Plaintiffs concede that the February 2021 ROW TOS constitutes an agreement between a ROW user and TikTok Pte. Ltd. and "its affiliates." Moreover, Plaintiffs do not present any evidence that refute the contention that Defendant is an affiliate of TikTok Pte. Ltd. Accordingly, Defendant is encompassed in the February 2021 ROW TOS and can enforce the terms, including the arbitration provision. *See Perez v. Bath & Body Works, LLC*, 2022 WL 2357004, at *3 (N.D. Cal. June 30, 2022) (noting a defendant could enforce the terms of a contract, including the arbitration provision, as an affiliate of the named entities because they are all "under common ownership or control").

   b.  *Conspicuous Notice and Manifestation of Assent*

  To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). These principals apply equally to contracts formed online, like the February 2021 ROW TOS. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022).

  There are two typical internet contracts: (1) "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use" and (2) "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen" and users supposedly manifest assent to the terms by continuing to use the website. *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). There are also "modified" clickwrap agreements, in which "users are notified of the existence of the website's terms of use and advised that by making some type of affirmative act, often by clicking a button, they are agreeing to them." *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1082 (S.D. Cal. 2024).

  Here, the arbitration clause is contained within a modified clickwrap agreement: Defendant's online social media platform provides the February 2021 ROW TOS to ROW users via hyperlink and then requires ROW users to affirmatively acknowledge by clicking a button to continue accessing the platform or signing up for an account. Plaintiffs do not contest (1) that they are ROW users, given their locations when registering their accounts with Defendant; (2) that they were presented with the then-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

current ROW TOS when accessing Defendant's platform or registering their accounts; nor (3) that they were presented with the February 2021 ROW TOS when it went into effect.

Instead, Plaintiffs contest they received conspicuous notice of the ROW TOS or manifested assent to it. "Courts enforce modified clickwrap agreements, like the one here, when they satisfy two 'rules to determine whether meaningful assent has been given': '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Open Book Theatre Co.*, 749 F. Supp. 3d at 1082 (quoting *Berman*, 30 F.4th at 856).

First, the Court considers whether Defendant's platform provided Plaintiffs reasonably conspicuous notice of the February 2021 ROW TOS. Courts "must look to both 'the context of the transaction' and the 'placement of the notice.'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019–20 (9th Cir. 2024). For the "context of the transaction," "[t]he nature of an agreement may anticipate 'some sort of continuing relationship that would require some terms and conditions.'" *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (quoting *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 26 (2021)) (cleaned up). Here, Defendant argues that Plaintiffs used Defendant's social platform for years as a tool to build their brand and audience, which Plaintiffs do not dispute. Accordingly, Plaintiffs were on notice of a continuing relationship requiring some terms and conditions when they registered their account..

Next, the Court considers the "placement of the notice" for the February 2021 ROW TOS. As outlined above, ROW users, like Plaintiffs, are presented with the governing ROW TOS when initially accessing the platform, signing up for a personal account, and whenever the terms are materially updated. To initially access the platform and whenever the terms are materially updated, the text that puts users on notice of the February 2021 ROW TOS is conspicuously located directly above the "Agree and continue" button that users must tap before continuing to access the social media platform. Since Plaintiffs registered two accounts before February 2021, they were presented with the February 2021 ROW TOS when it went into effect. The hyperlinked text for "Terms of Service" is black, bolded, and in title case, contrasting to the rest of the notice that is grey, not bolded, and lowercase. Plaintiffs also registered two accounts after February 2021. Thus, when signing up for their accounts, Plaintiffs were presented with a notice of the February 2021 ROW TOS that was conspicuously located directly above the "Sign up" button that users must click before registering their personal account on the platform. Above the "Sign up" button, the text states "By continuing, you agree to our **Terms of Service** and acknowledge that you have read our **Privacy Policy** to learn how we collect, use, and share your data." (N. Yeh Decl. ¶ 13) (emphasis in original.) Again, the hyperlinked text for "Terms of Service" is bolded and in title case, contrasting to the rest of the notice that is lowercase and not bolded.

In these notices, the hyperlink to the ROW TOS, which includes the arbitration provision, is displayed in bolded and title case text in a darker color than the background, making it readily apparent,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

and is located directly above an action button. The notice includes text adjacent to the action button stating that "By tapping 'Agree and continue'" or "By continuing,"[3] the user agrees to the TOS. Indeed, courts have approved similarly conspicuous notices when enforcing modified clickwrap agreements. *See, e.g.*, *Keebaugh*, 100 F.4th at 1020–21 (holding that notice for a mobile application's modified clickwrap agreement was conspicuous given the text was in a font color contrasting to the background, was displayed directly adjacent to the action button, and the statement clearly denoted that continued use would constitute acceptance).

Plaintiffs argue that this notice is not reasonably conspicuous because there is no change of font color or use of all capitalized letters. However, "there is no bright-line test for finding that a particular design element is adequate in every circumstance." *Chabolla*, 129 F.4th at 1156–57. Given that the text is in a darker font color than the background, is displayed directly above the action button, and the notice clearly denotes that continued use constitutes acceptance, the Court finds notice of the February 2021 ROW TOS was reasonably conspicuous to put Plaintiffs on notice of the terms, including the arbitration provision.

The second part of this analysis, whether Plaintiffs took some action that unambiguously manifested their assent to the February 2021 ROW TOS, is straight forward on these facts. "[C]ourts regularly find unambiguously manifested assent due to two defining features: the forced confrontation with the terms and the forced decision to accept or reject them by clicking a button." *Open Book Theatre Co.*, 749 F. Supp. 3d at 1084 (internal quotations omitted); *Oberstein*, 60 F.4th at 515 ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."). Here, when accessing Defendant's platform or when the ROW TOS was updated, Plaintiffs were presented with a notice that required they select an "Agree and continue" button before accessing the platform. Directly above the button, the notice explicitly advises that tapping the button constitutes acceptance. When signing up for their personal accounts, Plaintiffs were presented with another notice denoting that continuing with account registration would constitute acceptance of the February 2021 ROW TOS. Accordingly, Plaintiffs were necessarily confronted with the terms, advised that tapping the button or continuing with account registration would accept the terms, and decided to do so.

In sum, because Defendant's social media platform provided reasonably conspicuous notice of the February 2021 ROW TOS to which Plaintiffs unambiguously manifested assent, the February 2021 ROW TOS, including its arbitration provision, is a valid and binding written agreement. Thus, the first *Balen* factor is satisfied.

---

[3] ROW users are presented with each text depending on whether the notice is for initially accessing the platform and/or continuing to use the platform after the TOS was updated or signing up for a personal account, respectively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

2. *The Remaining Balen Factors*

For the remaining *Balen* factors, there appears to be little dispute that they are satisfied. For the second factor, the February 2021 ROW TOS "provides for arbitration in Singapore, which is a signatory of the Convention." *Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*, 2024 WL 4634059, at *7 (N.D. Cal. Oct. 29, 2024), *motion to certify appeal denied*, 2025 WL 107866 (N.D. Cal. Jan. 15, 2025).

For the third factor, the February 2021 ROW TOS appears to arise from a commercial legal relationship between Plaintiffs and Defendant. *See Prograph Int'l Inc. v. Barhydt*, 928 F.Supp. 983, 988–89 (N.D. Cal. 1996) (noting under the FAA, "commercial" relationships involve commerce). In their Complaint, Plaintiffs self-identified their relationship with Defendant as "commercial" and noted that they had "legitimate commercial interests tied to" their accounts on Defendant's social media platform, evident in the revenue Plaintiffs gained from Defendant's "monetized community." (Compl. ¶¶ 24, 26, 50.)

Finally, for the fourth factor, the commercial relationship here has a reasonable relation with foreign states given that Plaintiffs concede they reside outside the United States and have cultivated an "international" audience. (*See* Compl. ¶¶ 1–2, 12, 16.) Accordingly, this factor is similarly satisfied. *See Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 932 (N.D. Cal. 2003) (noting the Convention applies when arbitration involves "parties domiciled or having their principal place of business outside the enforcing [domestic] jurisdiction.").

In sum, all four *Balen* factors are met, and the February 2021 ROW TOS is a valid written agreement with an arbitration provision that falls under the Convention. The Court moves on to consider whether the agreement is otherwise unenforceable.

**B.    Defense to Enforcement**

If the Convention applies to an arbitration agreement, the district court must order arbitration unless the agreement is null and void or otherwise incapable of being performed. *Chloe Z Fishing Co.*, 109 F. Supp. 2d at 1241 (citing *Ministry of Def. of Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992)). Plaintiffs do not argue that the February 2021 ROW TOS is null and void or otherwise incapable of being performed, but instead purport the agreement is unenforceable because it is unconscionable.

To the Court's knowledge, the Ninth Circuit has not determined whether unconscionability is a basis upon which an agreement may be deemed null and void under the Convention. Other circuits have addressed this issue, concluding that unconscionability is not a defense that can be raised to an arbitration clause under the Convention because there is no universal definition internationally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

applicable. *See, e.g., Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) ("The limited scope of the Convention's null and void clause must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.") (internal quotations omitted). Here, Plaintiffs have not "explained how [unconscionability] makes for a defense that may be applied effectively across the range of countries that are parties to the Convention." *Id.* Accordingly, the Court declines to formulate one, and Plaintiffs' unconscionability defense fails. *See Greenberg v. Park Indem. Ltd.*, 2013 WL 12123695, at *8 (C.D. Cal. Oct. 8, 2013) (holding the same). Thus, the February 2021 ROW TOS is enforceable.

    **C.**    <u>**Scope of Arbitration**</u>

Finally, the parties dispute whether the arbitration provision applies to all of Plaintiffs' causes of action against Defendant. More specifically, Plaintiffs argue that their claims under 42 U.S.C. § 1983 and the Unruh Civil Rights Act are non-arbitrable as a matter of public policy.

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted). When an arbitration agreement contains a "clear and unmistakable" provision that delegates the question of arbitrability to the arbitrator, the Court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019).

Defendant argues that since the February 2021 ROW TOS incorporated the SIAC rules, the parties delegated arbitrability to the arbitrator. Indeed, courts have found that when parties are sophisticated, "the incorporation of the SIAC rules in [an agreement's] arbitration provision constitutes clear and unmistakable evidence that the parties to the contract intended to delegate questions of arbitrability to the arbitrator." *Translarity, Inc.*, 2024 WL 4634059 at *9. Here, all parties appear to be sophisticated: they all operate their respective global ventures reaching international audiences and generating substantial income. Accordingly, Plaintiffs and Defendant are sophisticated parties and "shall be expected to understand that incorporation of the [SIAC] rules delegates questions of arbitrability to the arbitrator." *Id.* (quoting *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013)). As such, the Court does not need to address the parties' arguments about whether all of Plaintiffs' causes of action are covered by the arbitration agreement, as that question is for the arbitrator.

In sum, the Convention applies to the February 2021 ROW TOS, a valid and enforceable written agreement providing that Plaintiffs and Defendant must arbitrate in Singapore. Since the February 2021

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-07834-RGK-AJR | Date | December 31, 2025 |
|---|---|---|---|
| Title | *Emory Andrew Tate et al v. TikTok, Inc. et al* | | |

ROW TOS delegates questions of arbitrability to the arbitrator, the Court **GRANTS** Defendant's Motion to Compel Arbitration in Singapore.[4]

**V.      CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration in Singapore in accordance with the terms of the February 2021 ROW TOS.

Accordingly, the Court **STAYS** all proceedings pending completion of arbitration pursuant to 9 U.S.C. § 3. Within 7 days after service of a final award, the parties shall file a joint report, advising the Court of the final award and how the parties intend to proceed.

**IT IS SO ORDERED.**

Initials of Preparer        rs

---

[4] Since the Court grants Defendant's primary arbitration venue request, the Court declines to address Defendant's alternative request for the Court to compel arbitration before the AAA.